**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION (CHICAGO)**

| | | |
|---|---|---|
| **LIBERTARIAN PARTY OF ILLINOIS, ILLINOIS GREEN PARTY, DAVID F. BLACK, SHELDON SCHAFER, RICHARD J. WHITNEY, WILLIAM REDPATH, BENNETT W. MORRIS, MARCUS THRONEBURG,** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs** | ) ) | **Case No. _____** |
| **v.** | ) ) | |
| **J.B. PRITZKER, in his official capacity as Governor of Illinois,** | ) ) ) | |
| **and** | ) ) | **Judge _____** |
| **WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASSANDRA B. WATSON, WILLIAM R. HAINE, IAN K. LINNABARY, CHARLES W. SCHOLZ, WILLIAM M. MCGUFFAGE, in their official capacities as Board Members for the Illinois State Board of Elections,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION REQUESTED**

**VERIFIED COMPLAINT**

**Nature of the Case**

1.     This is an action to declare unconstitutional, enjoin and/or modify Illinois' in-person signature collection and witnessing requirements for independent and third-party candidates in Illinois seeking to qualify for the November 3, 2020 general election in

light of the current public health emergency caused by the novel coronavirus and the Governor's emergency orders effectively shutting down the State.

**Signature Requirements for Candidates**

2.      "Illinois classifies general-election candidates into three groups: those affiliated with an 'established' political party, those affiliated with a 'new' political party, and those running as independents. If a candidate is affiliated with a party, whether established or new, the party name appears alongside the candidate's name on the ballot." *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 521 (7th Cir. 2017).

3.      "A party becomes established through a strong electoral performance.  If a party's candidate in the most recent gubernatorial election received more than 5% of the vote, the party is established throughout the state.  10 ILCS 5/10-2 (2010). A party can also attain established status on a more limited basis. If its candidate (or candidates collectively) received more than 5% of the vote in a particular race in the most recent statewide election—for example, the race for Illinois Comptroller or Illinois Secretary of State— then the party becomes established for statewide elections. Likewise, if a party received more than 5% of the vote in a congressional or county race in the last election, it becomes established for congressional districts or for that county." *Id*.

4.      Because Plaintiffs, Libertarian Party of Illinois and Illinois Green Party, did not receive the required 5% of the vote in the last gubernatorial election, they are classified as "new" parties under Illinois law for most elections and their candidates for presidential, senatorial, congressional and state/local offices must collect signatures from qualified voters in Illinois to support their nominating petitions in order to appear on the Illinois November 3, 2020 general election ballot.

5.     A new party "must gather a minimum number of signatures on nominating petitions. For state offices, the number is the lower of 25,000 or 1% of votes cast in the preceding statewide election. For county offices, the number is 5% of the votes cast in the county's preceding election. The new-party petition—with signatures … —must be filed between 134 and 141 days before the election." *Scholz*, 872 F.3d at 521-22 (citation omitted). The signature collection conditions and number of needed signatures for ballot access for independent candidates mirror those for new parties.

6.     For federal Senatorial candidates and President, independent and new-party candidates must gather at least 25,000 signatures, this number being less than 1% of the total votes cast in the last preceding statewide elections. *See Nader v. Keith*, 385 F.3d 729, 731 (7th Cir. 2004); *Hawkins v. Tenuto*, 2012 WL 5381276, *1 (N.D. Ill. 2012).

7.     "If any other statewide candidates of such political party polled more than 5% of the entire vote cast for the office for which they were running, then such political party shall be an 'established political party' in the State, but not as to any district or political subdivision within the State. (10 ILCS 5/7-2, 10-2).  For example, if a Governor for the 'Imaginary' party received more than 5% of the entire votes cast for Governor in Illinois, the 'Imaginary' party would be an established political party throughout the entire state and for every office running established party candidates. If the Attorney General for the 'Imaginary' party received more than 5% of the entire votes cast for Attorney General, the 'Imaginary' party would only be an established political party for statewide offices and not for any district offices, such as State Representative or State Senator."  STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE at 14.[1]

---

[1] https://www.elections.il.gov/Downloads/ElectionOperations/PDF/2020CanGuide.pdf.

8.    "A political party which at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is an 'established political party' as to such district or political subdivision. (10 ILCS 5/10-2) For example, if a candidate of the 'Imaginary' party for State Senator in the 51st district received more than 5% of the entire votes cast in that district, the 'Imaginary' party would be an established political party to just the 51st Senate district." STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 14.

9.    Because Plaintiff, Illinois Green Party, did not receive the required 5% of the vote for any state-wide office nor in most district elections, it is classified as a "new" party under Illinois law for these elected offices, and its candidates for these offices, including President and United States Senate, must collect signatures from qualified voters in Illinois to support their nominating petitions in order to appear on the Illinois November 3, 2020 general election ballot.

10.    Because Plaintiff, Libertarian Party of Illinois, did not receive the required 5% of the vote for any state-wide office nor in most district elections, it is classified as a "new" party under Illinois law for these elected offices, and its candidates for these offices, including President, United States Senate and United States House of Representatives, must collect signatures from qualified voters in Illinois to support their nominating petitions in order to appear on the Illinois November 3, 2020 general election ballot.

4

11.     "A new political party is created when nomination papers are filed for a new political group within the state, a specific district or a political subdivision." STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 14; *see* 10 ILL. COMP. STAT. 5/10-2 (2010).

12.     "When a petition to form a new political party is filed within a political subdivision for which officers are elected from districts and at-large, such petition shall consist of separate components for each district from which an officer is to be elected (*see* SBE Form P-8B). Each component shall be circulated only within the district of the political subdivision and signed only by qualified electors who are residents of that district. Each sheet of such petition must contain a complete list of the names of the candidates of the party for all offices to be filled in the political subdivision at-large, but the sheets comprising each component shall also contain the names of those candidates to be elected from the particular district. Each component of the petition for each district from which an officer is to be elected must be signed by qualified voters of the district equaling not less than 5% of the number of voters who voted at the last regular election in such district at which officers were elected to serve the district. The entire petition, including all components, must be signed by a total of qualified voters of the entire political subdivision equaling in number not less than 5% of the number of voters who voted at the last regular election in such political subdivision at which an officer was elected to serve the political subdivision at-large. (10 ILCS 5/10-2)." STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 15.

13.     "Independent candidates are those individuals who are not candidates of any political party, but who are candidates in a general election at which party candidates

may appear on the ballot. Such candidates are listed on the ballot under the heading 'Independent.' (10 ILCS 5/10-3)." STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 16.

14. New political parties and independent candidates have from March 24, 2020 until June 22, 2020 to gather the supporting signatures needed to support their candidates and candidacies for federal, state-wide, county and most local elections. *See* 10 ILCS 5/10-4, 10-6. *See* STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 4.

15. For state-wide offices, President, and the United States Senate, 25,000 signatures are required to be collected by independent and new party candidates, *see* State of Illinois 2020 Candidate's Guide, *supra*, at 22, while the raw number of signatures required for other offices, such as congressional offices, varies by district. *See* 10 ILCS 5/10-2.

16. For United States Representative, for example, independent and new-party candidates must gather the following minimum numbers of signatures in order to qualify for the ballot:

A.   District 1: independent candidates between 13,276 – 21,240 signatures; new party candidates at least 13,276.

B.   District 2: independent candidates between 12,104 – 19,366 signatures; new party candidates at least 12,104.

C.   District 3: independent candidates between 11,652 – 18,643; new party candidates at least 11,652.

D.   District 4: independent candidates between 8,557 – 13,690; new party candidates at least 8,557.

E.       District 5: independent candidates between 14,326 – 22,921; new party candidates at least 14,326.

F.       District 6: independent candidates between 15,985 – 25,575; new party candidates at least 15,985.

G.       District 7: independent candidates between 12,725 – 20,359; new party candidates at least 12,725.

H.       District 8: independent candidates between 10,104 – 16,166; new party candidates at least 10,104.

I.       District 9: independent candidates between 14,909 – 23,853; new party candidates at least 14,909.

J.       District 10: independent candidates between 12,092 – 19,346; new party candidates at least 12,092.

K.       District 11: independent candidates between 11,568 – 18,508; new party candidates at least 11,568.

L.       District 12: independent candidates between 13,223 – 21,156; new party candidates at least 13,223.

M.       District 13: independent candidates between 13,787 – 22,058; new party candidates at least 13,787.

N.       District 14: independent candidates between 15,019 – 24,030; new party candidates at least 15,019.

O.       District 15: independent candidates between 13,076 – 20,920; new party candidates at least 13,076.

P.      District 16: independent candidates between 12,952 – 20,722; new party candidates at least 12,952.

Q.      District 17: independent candidates between 11,649 – 18,637; new party candidates at least 11,649.

R.      District 18: independent candidates between 14,779 – 23,646; new party candidates at least 14,779.

*See* STATE OF ILLINOIS 2020 CANDIDATE'S GUIDE, *supra*, at 23-24.

17.     For State Senator, using this same formula, independent candidates and new party candidates must collect minima in various districts between 2926 and 5549 signatures. *See id*. at 26-27.

18.     For State Representative, using this same formula, independent candidates and new party candidates must collect minima in various districts between 990 and 2761 signatures. *See id*. at 29-32.

19.     Illinois law mandates that signatures supporting candidates' petitions be collected "in the presence of the petition circulator." *See* 10 ILCS 5/7-10, 8-8, 10-4.

20.     The circulator of a candidate's petition must personally witness all signatures given and sign the required circulator's statement affirming that all signatures were taken in their presence. No one may be considered a circulator of any petition page except the person who signs the circulator's statement. *See* 10 ILCS 5/7-10, 8-8, 10-4.

21.     Illinois's signature collection requirement for ballot access for new party and independent candidates originated in 1891, when the requirement was only 2% of the last vote in the relevant jurisdiction. *See* ALL THE LAWS OF THE STATE OF ILLINOIS, THIRTY-

SEVENTH GENERAL ASSEMBLY, § 291, at 93 (1891).[2]  In the 129 years since Illinois adopted that requirement, it has not substantially updated or improved its petitioning procedure, despite the availability of less burdensome alternatives enabled by modern technology.  Yet the number of signatures required under Illinois law has substantially increased.

22.     Collecting signatures by hand on paper nomination petitions is inherently burdensome, labor-intensive and inefficient as a means of demonstrating voter support. Many signatures are invalidated due to illegibility, missing information and other technical defects. This obliges candidates and parties to collect 25-50 percent more signatures than the requirement, to account for those that may be invalidated.

23.     While Illinois's required number of supporting signatures collected and witnessed in person has been increased, the manner of their collection has not been changed nor modernized in over 100 years.

## **PARTIES**

24.     Plaintiff, the Libertarian Party of Illinois, is a political party in Illinois that seeks to qualify presidential, congressional and local candidates for Illinois's November 3, 2020 election as new party candidates throughout the State; in addition to its presidential ticket, these candidates include:

A.     Danny Malouf, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States Senate.

---

[2] https://archive.org/details/lawsofstateofill1891illi/page/92/mode/2up.

9

B. Nathaniel Scalf, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States House of Representatives, District 17.

C. Joshua Flynn, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the Illinois House, District 78.

D. Sasha Cohen, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for Illinois House, District 70.

E. Jake Leonard, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its local candidate for Montgomery County Board, District 2.

F. Bennett W. Morris, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States House of Representatives, District 5.

G. William Redpath, who was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States House of Representatives, District 6.

25. Plaintiff, Illinois Green Party, is a political party in Illinois that seeks to qualify presidential, congressional and local candidates for Illinois's November 3, 2020 election as new party candidates throughout the State; in addition to its presidential ticket of Howie Hawkins and Diane Moxley, these candidates include:

A. David F. Black, who is the United States Senate candidate for the Illinois Green Party listed on the Green Party of Illinois's current petition for that office.

B.     Joshua Hellmann, who is the Jackson County Board, District 3, candidate for the Illinois Green Party.

C.     Charlie Howe, who is the Jackson County Board, District 6, candidate for the Illinois Green Party.

25.    Plaintiff, David F. Black, is a registered voter in Illinois and the United States Senate candidate for the Illinois Green Party listed on the Illinois Green Party's current petition for that office.  Black is also an Illinois Green Party supporter who has in the past voted for Illinois Green Party candidates and who wishes to vote for Illinois Green Party candidates in the 2020 general election. He is also an experienced circulator of candidates' petitions who has successfully gathered signatures for Illinois Green Party candidates in the past and who seeks to do so for the November 3, 2020 general election. He is in a high-risk age category for experiencing severe complications from the coronavirus.

26.    Plaintiff, Sheldon Schafer, is the Co-Chair of the Illinois Green Party, an Illinois Green Party supporter who has in the past voted for Illinois Green Party candidates, and a registered voter who wishes to vote for Illinois Green Party candidates in the 2020 general election. He is also an experienced circulator of candidates' petitions who has successfully gathered signatures for Illinois Green Party candidates in the past and who seeks to do so for the November 3, 2020 general election. He is in a high-risk age category for experiencing severe complications from the coronavirus.

27.    Plaintiff, Richard J. "Rich" Whitney, is the Co-Chair of the Illinois Green Party, an Illinois Green Party supporter who has in the past voted for Illinois Green Party candidates, and a registered voter who wishes to vote for Illinois Green Party candidates

in the 2020 general election. He is also an experienced circulator of candidates' petitions who has successfully gathered signatures for Illinois Green Party candidates in the past and who seeks to do so for the November 3, 2020 general election.

28.     Plaintiffs, Richard J. "Rich" Whitney and Sheldon Schafer, as Co-Chairs of the Illinois Green Party, have full authority to act for and on behalf of the Green Party of Illinois in this action.

29.     Plaintiff, Bennett W. Morris, is the current Chair of the Libertarian Party of Illinois, a registered voter in Illinois who seeks to vote for Libertarian Party of Illinois candidates, an experienced circulator of candidates' petitions who has successfully gathered signatures for Libertarian Party of Illinois candidates in the past, and who seeks to do so in the 2020 election. He was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States House of Representatives, District 5.

30.     Plaintiff, William Redpath, is a former Chair of the Libertarian National Committee, current Libertarian National Committee At-Large Representative, registered voter in Illinois, and Libertarian Party of Illinois Ballot Access Director. He has successfully gathered signatures for Libertarian Party of Illinois candidates in the past and seeks to do so in the 2020 election. He was nominated by the Libertarian Party of Illinois at its March 14, 2020 convention as its candidate for the United States House of Representatives, District 6.

31.     Plaintiff, Bennett W. Morris, is the Chair of the Libertarian Party of Illinois and has full authority to act on its behalf in this action.

32.     Plaintiff, Marcus Throneburg, is an independent candidate in Illinois seeking election at the November 3, 2020 election to the Illinois State Senate, 37th District.  He was previously elected to the Bureau County Board in 2003, lives in Kewanee, Illinois, is a registered voter in Illinois, and commenced his formal campaign for the Illinois State Senate in January 2020.

33.     Defendant, J.B. Pritzker, is the Governor of Illinois and possesses emergency power to act during emergencies and times of crisis, like that with the coronavirus.

34.     Defendants, William J. Cadigan, Katherine S. O'Brien, Laura K. Donahue, Cassandra B. Watson, William R. Haine, Ian K. Linnabary, Charles W. Scholz, and William M. McGuffage, are members of the Illinois Board of Elections and are empowered to enforce and administer Illinois election laws, including the signature requirements for independent and new party candidates being challenged in this action.

35.     Defendants, Members of the Illinois Board of Elections, are specifically empowered by Illinois law to determine the validity of nominating petitions and issue certificates of nominations to candidates.

36.     At all times relevant to this action, Defendants were engaged in state action under color of state law.

37.     Defendants are being sued in their official capacities for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

## **JURISDICTION**

38.     Jurisdiction in this case is predicated on 28 U.S.C. § 1331, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983.

## VENUE

39.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

## FACTS

40.     In December 2019, an outbreak of respiratory disease caused by a novel coronavirus emerged in Wuhan, China. The respiratory disease caused by the novel coronavirus, now known as "COVID-19," is an infectious disease that can spread from person to person and can result in serious illness and death.

41.     On January 30, 2020, after the coronavirus outbreak had spread well beyond China, the World Health Organization declared that COVID-19 constitutes a Public Health Emergency of International Concern.

42.     On January 31, 2020, as a result of confirmed cases of COVID-19 in the United States, Health and Human Services Secretary Alex M. Azar II declared a nationwide public health emergency retroactive to January 27, 2020.

43.     On February 27, 2020, the Centers for Disease Control issued guidance recommending, among other things, that members of the public practice "social distancing" and minimize close contact with others in order to slow the spread of COVID-19.

44.     On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.

45.     On March 13, 2020, the President of the United States declared a national emergency (retroactive to March 1, 2020) due to the COVID-19 outbreak in the United States.

46. On March 9, 2020, the Governor of Illinois proclaimed the entire State of Illinois a disaster area. *See* GUBERNATORIAL DISASTER PROCLAMATION, March 9, 2020.[3]

47. On March 13, 2020, the Governor of Illinois banned all "public and private gatherings" with 1000 or more persons; that order declared in relevant part:

> Beginning March 13, 2020, all public and private gatherings in the State of Illinois of 1,000 or more people are cancelled for the duration of the Gubernational Disaster Proclamation. A public or private gathering includes any event in which appropriate social distancing measures cannot be maintained, such as concerts, festivals, conferences, sporting events, or other planned events with large numbers of people in attendance. A public or private gathering does not include normal school or work attendance.

EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 2).[4]

48. On March 13, 2020, the Governor ordered the closing of all schools. EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 3).[5]

49. On March 16, 2020, the Governor closed all bars and restaurants and banned gatherings of 50 or more people. EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 5).[6]

50. On March 17, 2020, the Governor suspended expirations of licenses, registrations and permits for vehicles and drivers throughout the State, and directed that this suspension extend for "thirty days following [the Declaration of Emergency's

---

[3] https://www2.illinois.gov/sites/gov/Documents/APPROVED%20-%20Coronavirus%20Disaster%20Proc%20WORD.pdf.

[4] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-04.aspx.

[5] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-05.aspx.

[6] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-07.aspx.

termination." EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 6).[7]

51.     On March 20, 2020, the Governor ordered everyone in Illinois to shelter at home, with limited exceptions for "essential" activities and services, and to maintain a six foot distance from others:  That order stated in relevant part:

> Stay at Home; Social Distancing Requirements; and Essential Businesses and Operations

> 1.  **Stay at home or place of residence**. With exceptions as outlined below, all individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence except as allowed in this Executive Order. To the extent individuals are using shared or outdoor spaces when outside their residence, they must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person, consistent with the Social Distancing Requirements set forth in this Executive Order. All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations, all as defined below.

> Individuals experiencing homelessness are exempt from this directive, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to use in their operation COVID-19 risk mitigation practices recommended by the U.S. Centers for Disease Control and Prevention (CDC) and the Illinois Department of Public Health (IDPH)). Individuals whose residences are unsafe or become unsafe, such as victims of domestic violence, are permitted and urged to leave their home and stay at a safe alternative location. For purposes of this Executive Order, homes or residences include hotels, motels, shared rental units, shelters, and similar facilities.

> 2.  **Non-essential business and operations must cease**. All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home).

> All Essential Businesses and Operations are encouraged to remain open. To the greatest extent feasible, Essential Businesses and Operations shall comply with

---

[7] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-08.aspx.

Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times, including, but not limited to, when any customers are standing in line.

3. **Prohibited activities**. All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC, any gathering of more than ten people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence.

All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public.

This Executive Order supersedes Section 2 of Executive Order 2020-07 (COVID-19 Executive Order No. 5), which prohibited gatherings of 50 people or more.

EXECUTIVE ORDER TO EXPAND TELEHEALTH SERVICES AND PROTECT HEATH CARE PROVIDERS IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 8).[8]

52. On March 26, 2020, the Governor ordered that notaries need not witness signatures in person:

During the duration of the Gubernatorial Disaster Proclamation related to the outbreak of COVID-19, the requirement that a person must "appear before" a Notary Public commissioned under the laws of Illinois pursuant to the Illinois Notary Act, 5 ILCS 312/6-102, is satisfied if the Notary Public performs a remote notarization via two-way audio-video communication technology, provided that the Notary Public commissioned in Illinois is physically within the State while performing the notarial act and the transaction follows the guidance posted by the Illinois Secretary of State on its website.

---

[8] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx.

EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 12).[9]

53.     On March 26, 2020, the Governor ordered that "any act of witnessing required by Illinois law may be completed remotely by via two-way audio-video communication technology, …." *Id.*

54.     On March 26, 2020, the Governor ordered that "notwithstanding any law or regulation of the State of Illinois to the contrary, absent an express prohibition in a document against signing in counterparts, all legal documents, including deeds, last wills and testaments, trusts, durable powers of attorney for property, and powers of attorney for health care, may be signed in counterparts by the witness(es) and the signatory," *id.*, thus allowing signatories and witnesses to attach their signatures remotely from one another on "all" legal documents.

55.     On April 1, 2020, Governor Pritzker issued COVID-19 EXECUTIVE ORDER NO. 16, which, *inter alia*, extended COVID-19 EXECUTIVE ORDER NO. 8 for the duration of the Proclamation of Disaster, which currently extends through April 30, 2020. *See* EXECUTIVE ORDER IN RESPONSE TO COVID-19 (COVID-19 EXECUTIVE ORDER NO. 16).[10]

56.     Given the severity of the coronavirus pandemic and its impact on Illinois, it remains uncertain whether the Governor's emergency orders, including his "Stay at home" and shelter order, will be lifted before the June 22, 2020 qualifying deadline for independent and new party candidates.

---

[9] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-14.aspx.
[10] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-18.aspx

57.     Even assuming that the Governor's emergency orders were lifted on May 1, 2020, Plaintiffs and their candidates will have lost over five weeks of petitioning time, or more than one-third of the time allotted to them to collect signatures in person by Illinois law.

58.     According to the Centers for Disease Control, older adults (particularly those over 65) and people of any age who have serious underlying medical conditions (including asthma, heart disease, cancer, and diabetes) may be at higher risk for severe illness from COVID-19.

59.     Petitioning to qualify candidates and parties for Illinois' November 3, 2020 general election ballot is not defined as an "essential" activity under Governor Pritzker's COVID-19 EXECUTIVE ORDER NO. 8. The public-health emergency caused by COVID-19 and the various "Stay at home" and shelter orders issued by the Governor make it unlawful and practically impossible to gather petition signatures in Illinois. COVID-19 EXECUTIVE ORDER NO. 8 expressly provides that it "may be enforced by State and local law enforcement" (Section 17). Further, government officials at virtually every level are directing people to stay at home, to practice "social distancing," and to avoid being within six feet of other people.

60.     The Governor's new vehicle and driver licensing rules and his new remote rules for notaries and witnesses demonstrate that requiring in-person contact to satisfy Illinois's petitioning requirements is not presently possible and will be problematic for weeks to come after emergency measures are lifted.

61.     Gathering signatures during the COVID-19 outbreak endangers not only the health but also the lives of petition-circulators, potential signers, and the public at large.

62. Even if it were legal and/or physically feasible to gather signatures during the current public health emergency, it is unlikely that petition-circulators would be able to gather signatures because there are fewer people congregating in public places and fewer people are likely to open their doors to strangers who come knocking.

63. Even after the public-health emergency subsides, the COVID-19 outbreak is likely to have a negative effect on signature gathering for a substantial period of time.

64. Illinois has adopted the Illinois Electronic Commerce Security Act[11] (a version of which all states have enacted), providing that electronic signatures must be given legal effect for purposes of most contracts and many documents of legal significance.

65. Arizona has already implemented online petitioning, *see* ARIZONA SECRETARY OF STATE: CITIZEN CLEAN ELECTIONS COMMISSION, WELCOME TO E-QUAL[12] ("In Arizona, candidates are required to obtain a minimum number of petition signatures to appear on a ballot. Voters interested in assisting Statewide and Legislative candidates can now sign a petition electronically."), and New Jersey's Governor on March 19, 2020 by executive order implemented online petitioning and signature collection for candidates in response to the coronavirus pandemic. *See* EXECUTIVE ORDER NO. 105, March 19, 2020[13] ("The Secretary of State, county clerks, and municipal clerks shall also accept petitions with signatures collected via an online form created by the Secretary of State, which shall be available for use by Thursday, March 19, 2020."). ."). Denver, Colorado and the District of Columbia have also implemented a web-enabled application called E-Sign, which

---

[11] http://www.ilga.gov/legislation/ilcs/ilcs5.asp?ActID=89&ChapterID=2.

[12] https://apps.azsos.gov/equal/.

[13] https://www.state.nj.us/state/elections/assets/pdf/candidate/EO-105.pdf.

enables petition circulators to collect signatures on electronic tablets. These web-based platforms are integrated with the jurisdiction's voter rolls, and thus validate signatures automatically, eliminating the need to collect more signatures than the statutorily required number.

66.     The Connecticut Secretary of State on March 28, 2020 formally recommended to the Connecticut Governor and responsible government officials that "[f]or the general election, my recommendation is to again eliminate any path to ballot access via petitions as a minor party or petitioning candidate for the November general election ballot. Instead, grant 3 automatic ballot access for all races in November to any third parties that already have statewide ballot access, currently the Green Party, the Independent Party, the Libertarian Party, and the Working Families Party." *See* Exhibit 1 (attached).

67.     Illinois has adopted provisions requiring that the State and its Counties pay for primary elections conducted by the two major political parties. *See* 10 ILCS 5/7-6 (expenses of primary elections to be paid as provided in Sections 17-30 – 17-32); 10 ILCS 5/17-30 ("Each county shall pay the costs of the election in that county and shall be reimbursed by the state").

68.     In contrast to the major political party candidates whose primary elections are paid for by the State of Illinois, Illinois does not pay any of the costs and expenses incurred by any independent or new party candidates who are required to petition and gather signatures in order to gain access to the general election ballot.

**Impossibility of Circulation by Candidates**

69.     Plaintiffs, Libertarian Party of Illinois, Illinois Green Party, their members, their supporters, their candidates, and the individual named Plaintiffs, seek to begin collecting

21

signatures in order to qualify candidates for Illinois's November 3, 2020 general election ballot.

70.     Plaintiff, Marcus Throneburg, an independent candidate for office in Illinois, seeks to begin collecting signatures in order to qualify for Illinois's November 3, 2020 general election ballot.

71.     Signatures must be collected in-person and witnessed in-person under Illinois law for both independent and new party candidates.

72.     Signature collection could not begin under Illinois law for either independent or new party candidates until March 24, 2020. Because of the emergency orders issued by the Governor, the public-health concerns, measures and protocols described herein, it is not possible to gather petition signatures other than the miniscule number that may be collected within circulators' separate households. Substantive petition gathering, in public places, or door-to-door, is not presently possible, has not yet begun in Illinois, and cannot even begin for the foreseeable future.

73.     Signatures collected to support independent and new party candidates must be filed not later than June 22, 2020 with the appropriate elections officials in Illinois in order for those new party and independent candidates to qualify for the November 3, 2020 general election ballot.

74.     Because of the Governor's orders issued between March 9, 2020 and present and the public-health concerns, measures and protocols described herein, it has become impossible for independent and new party candidates to collect the required number of signatures in-person and properly witness them as required by Illinois law.

75.     Because it is not clear when the Governor's emergency orders will be lifted, it is uncertain at present whether in person signature collection will become possible before the deadline of June 22, 2020 for independent and new party candidates.

76.     On March 18, 2020 and March 19, 2020, respectively, Plaintiffs Libertarian Party of Illinois and Illinois Green Party sent separate written requests to the Defendant, Governor, and Defendants, Members of the Illinois State Board of Elections (in the latter instance through the Executive Director of the Illinois State Board of Elections), seeking to have Illinois's signature collection requirements waived and/or suspended for the November 3, 2020 general election.

77.     Although the Governor has not responded, the Illinois Board of Elections responded on March 23, 2020, and stated that it could not provide the requested relief:

> There is no doubt that the current health crisis is impacting every facet of our lives, including the election process. We appreciate the unique dilemma you present in your letter and understand that you are tasked with the difficult and unprecedented duty of balancing obligations under the Election Code with safety concerns for candidates, circulators and petition signers alike. However, the State Board of Elections does not have authority to grant you the relief you request. I am copying the Governor's Office of Constituent Affairs on this correspondence so they are aware of your concerns and the State Board of Elections' response.

*See* Exhibit 2 (attached).

### Injury-in-Fact Caused Plaintiffs

78.     Illinois law, together with the coronavirus outbreak and the Governor's orders, directly cause injury-in-fact to Plaintiffs and Plaintiffs' First and Fourteenth Amendment rights.

79.     Plaintiffs' injuries are fairly traceable to the Illinois laws requiring in person signature collection for candidates between March 24, 2020 and June 22, 2020, the coronavirus pandemic, and the Governor's orders described in this action.

80.     This Court has the power to properly redress Plaintiffs' injuries by issuing prospective injunctive and declaratory relief prohibiting enforcement of Illinois's signature requirements for candidates for office for the November 3, 2020 general election.

81.     This Court may properly redress Plaintiffs' injuries by directing Defendants to accept for the November 3, 2020 general ballot the nominating papers of Plaintiff, Throneburg, and any candidates running on behalf of the Plaintiff, Libertarian Party of Illinois and Plaintiff, Illinois Green Party, without requiring the supporting signatures from voters otherwise required by Illinois law.

## FIRST CAUSE OF ACTION

## FIRST AMENDMENT

82.     All previous paragraphs and allegations are incorporated herein.

83.     Under present circumstances, Illinois's ballot-access requirements for independent candidates and new party candidates for President of the United States, United States Senate, United States Representative, state-wide State offices, district State offices, and local offices violate rights guaranteed to these Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

84.     A real and actual controversy exists between the parties.

85.     Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

86.     Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## SECOND CAUSE OF ACTION

## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

87.     All previous paragraphs and allegations are incorporated herein.

88.     Under present circumstances, Illinois's ballot-access requirements for independent candidates and new party candidates for President of the United States, United States Senate, United States Representative, state-wide State offices, district State offices, and local offices violate rights guaranteed to these Plaintiffs by the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

89.     A real and actual controversy exists between the parties.

90.     Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

91.     Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## DEMAND FOR RELIEF

        **WHEREFORE**, the Plaintiffs respectfully pray that this Court:

(1)     Assume original jurisdiction over this case;

(2)     Issue a temporary restraining order and/or preliminary injunction (i) prohibiting enforcement of Illinois's supporting signature requirements for  candidates for office for Illinois's November 3, 2020 general election; (ii) directing Defendants to accept Plaintiff Throneburg's and Plaintiffs' Illinois Green Party and Libertarian Party of Illinois candidates' nominating papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (iii) directing Defendants to place

Plaintiff Throneburg's and Plaintiffs' Illinois Green Party and Libertarian Party of Illinois candidates' names on the Illinois November 3, 2020 general election ballot.

(3)     Issue a declaratory judgment stating that, in light of the current public health emergency caused by the novel coronavirus and executive orders requiring that Illinois citizens stay at home and shelter in place, Illinois's supporting signature requirements for independent and new party candidates for office cannot be constitutionally enforced under the First and Fourteenth Amendments, that Defendants must accordingly accept Plaintiff Throneburg's and Plaintiffs' Illinois Green Party and Libertarian Party of Illinois candidates' nominating papers for the November 3, 2020 general election ballot without requiring supporting signatures from voters, and that Defendants must accordingly place these independent and new party candidates' names on the Illinois November 3, 2020 general election ballot.

(4)     Issue a permanent injunction (i) prohibiting enforcement of Illinois's supporting signature requirements for candidates for office for Illinois's November 3, 2020 general election; (ii) directing Defendants to accept Plaintiff Throneburg's and Plaintiffs' Illinois Green Party and Libertarian Party of Illinois candidates' nominating papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (iii) directing Defendants to place Plaintiff Throneburg's and Plaintiffs' Illinois Green Party and Libertarian Party of Illinois candidates' names on the Illinois November 3, 2020 general election ballot.

(5)     Order Defendants to pay to Plaintiffs their costs and a reasonable attorney's fees under 42 U.S.C. § 1988(b); and

(6)     Retain jurisdiction over this matter and order Defendants to provide to Plaintiffs any additional relief the Court deems just.

Respectfully submitted,

*/s Scott K. Summers*

Scott K. Summers
P.O. Box 430
Harvard, IL  60033
Mobile:    815-403-8411
Fax:        815-986-1333
Scott@scottksummers.com
*Counsel of Record*
Attorney for Plaintiffs

| | |
|---|---|
| Oliver Hall | Mark R. Brown |
| Center for Competitive Democracy | 303 E. Broad Street |
| P.O. Box 21090 | Columbus, Ohio 43215 |
| Washington, DC 20009 | 614-236-6590 |
| 202-248-9294 | Attorney for Plaintiffs |
| oliverhall@competitivedemocracy.org | *Pro hac vice pending* |
| Attorney for Plaintiffs | |
| *Pro hac vice pending* | |

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, David F. Black, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on: _____


_David F. Black_____

David F. Black
Plaintiff

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, Sheldon Schafer, acting under the authority of the Plaintiff, Illinois Green Party, and on my own behalf as Plaintiff, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 1 April 2020

Sheldon Schafer
Co-Chair, Green Party of Illinois

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, Sheldon Schafer, acting under the authority of the Plaintiff, Illinois Green Party, and on my own behalf as Plaintiff, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____

_____
Sheldon Schafer
Co-Chair, Green Party of Illinois

28

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, Richard J. Whitney, acting under the authority of the Plaintiff, Illinois Green Party, and on my own behalf as Plaintiff, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _April 1, 2020_

_____

Richard J. Whitney
Co-Chair, Green Party of Illinois

**VERIFICATION OF PLAINTIFF**
**(pursuant to 28 U.S.C. § 1746)**

I, Bennett W. Morris, acting under the authority of the Plaintiff, Libertarian Party of Illinois, and on my own behalf as Plaintiff, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 4/2/2020

Bennett W. Morris
Chair, Libertarian Party of Illinois

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, William Redpath, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on: _____4/2/2020_____

_____

William Redpath

**VERIFICATION OF PLAINTIFF**
**(pursuant to 28 U.S.C. § 1746)**

I, Marcus Throneburg, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _April 1 2020_

Marcus Throneburg