IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION (CHICAGO)

| | |
|---|---|
| **LIBERTARIAN PARTY OF ILLINOIS, ILLINOIS GREEN PARTY, DAVID F. BLACK, SHELDON SCHAFER, RICHARD J. WHITNEY, WILLIAM REDPATH, BENNETT W. MORRIS, MARCUS THRONEBURG,** | |
| Plaintiffs | Case No. 1:20-cv-02112 |
| v. | Judge: Charles R. Norgle |
| **J.B. PRITZKER**, in his official capacity as Governor of Illinois, | Magistrate: Jeffrey Cummings |
| and | |
| **WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASSANDRA B. WATSON, WILLIAM R. HAINE, IAN K. LINNABARY, CHARLES W. SCHOLZ, WILLIAM M. MCGUFFAGE**, in their official capacities as Board Members for the Illinois State Board of Elections, | |
| Defendants. | |

**MOTION FOR PRELIMINARY INJUNCTION
AND/OR TEMPORARY RESTRAINING ORDER
AND ATTACHED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 65(a) and (b), and in view of the public health crisis precipitated by the coronavirus pandemic known as COVID-19 and the ensuing emergency measures adopted by the State of Illinois, Plaintiffs respectfully move the Court to enter a preliminary injunction and/or temporary restraining order that prohibits Defendants from enforcing or applying those provisions of the Illinois Election Code that require Plaintiffs, as a

1

condition of qualifying for the general election ballot, to collect a specified number of voters' signatures on petitions. Plaintiffs specifically request that the Court enjoin Defendants from enforcing the following statutory provisions as applied to Plaintiffs in the 2020 election cycle: 10 ILCS 5/7-10; 10 ILCS 5/7-10-2; and 10 ILCS 5/7-10-3. Further, Plaintiffs request that the Court direct Defendants to: (1) accept Plaintiffs Illinois Green Party ("ILGP") and Libertarian Party of Illinois ("LPIL") candidates' and Plaintiff Throneburg's nominating papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (2) place Plaintiffs ILGP and LPIL candidates' and Plaintiff Throneburg's names on Illinois' November 3, 2020 general election ballot.

Plaintiffs certify that counsel for each Defendant has been contacted and provided copies of the Complaint (together will all Exhibits), this Motion, and Plaintiffs' Proposed Order. Plaintiffs have requested of counsel for each of the Defendants a waiver of service of process under Federal Rule of Civil Procedure 4.

Respectfully submitted,

/s/ Scott K. Summers
Scott K. Summers
P.O. Box 430
Harvard, IL 60033
Mobile: 815-403-8411
Fax: 815-986-1333
Scott@scottksummers.com
Counsel of Record

Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294
oliverhall@competitivedemocracy.org
Pro Hac Vice Pending

Mark R. Brown
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu
Pro Hac Vice Pending

*Attorneys for Plaintiffs*

2

**MEMORANDUM OF LAW IN SUPPORT**

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Illinois and nationwide. In an effort to contain the virus and protect the public health, the State of Illinois has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiffs and other citizens to comply with the statutory procedures they must follow to participate in Illinois' electoral processes. In particular, as voters, petition circulators, candidates and minor political parties in Illinois, Plaintiffs are required by law to obtain voters' signatures on petitions to qualify their respective candidates for placement on Illinois' November 3, 2020 general election ballot. Under the emergency measures now in place, however, Plaintiffs cannot lawfully comply with these requirements.

On March 9, 2020, Illinois Governor J.B. Pritzker issued a Gubernatorial Disaster Proclamation, to remain in effect for 30 days, which declares "all counties in the State of Illinois as a disaster area," and directs the Illinois Department of Public Health to cooperate with the Governor and other state agencies and authorities "in the development of strategies and plans to protect the public health in connection with the present public health emergency." *See* Governor J.B. Pritzker, *Gubernatorial Disaster Proclamation*, §§ 2-3, available at https://coronavirus.illinois.gov/s/ (accessed March 28, 2020). Thereafter, Governor Pritzker issued a number of executive orders that, *inter alia*, cancelled public and private gatherings of more than 1,000 people (No. 2020-04), closed all public and private schools (No. 2020-05), and closed all bars, restaurants and other establishments that serve food and beverages on the premises (No. 2020-07). *See* Illinois.gov, *Executive & Administrative Orders*, available at https://www2.illinois.gov/Pages/government/execorders/executive-orders.aspx#y2020 (accessed

3

March 28, 2020). Most relevant to the instant action is Executive Order No. 2020-10, which Governor Pritzker issued on March 20, 2020. It provides that:

- All individuals currently living in the State of Illinois must "stay at home or at their place of residence" except for purposes of conducting certain "essential" activities or functions;

- Individuals must "at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person…";

- "[A]ll public and private gatherings of any number of people occurring outside a single household or living unit are prohibited" except for "essential" activities or functions;

- "[A]ll places of public amusement … shall be closed to the public"; and

- "[A]ll travel … is prohibited" except that defined as "essential".

*See id.* Executive Order No. 2020-10 further provides that its intent is to "is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue." *Id.* Collecting signatures on petitions is not included among the specified "essential" activities or services. *See id.* Finally, Executive Order No. 2020-10 "may be enforced by State and local law enforcement…" *Id.*

By its express terms, Executive Order No. 2020-10 prohibits Plaintiffs from approaching voters in public for purposes of obtaining their signatures on petitions. Indeed, the order places them in jeopardy of arrest and criminal prosecution if they do. At the same time, the Illinois Election Code requires that Plaintiffs obtain signatures on petitions to qualify their respective candidates for placement on Illinois' November 3, 2020 general election ballot, and provides them with no alternative procedure. Further, the petitioning period for Plaintiffs ILGP, LPIL and Throneburg began on March 24, 2020 and lasts only 90 days, or until June 22, 2020.

On March 18, 2020 and March 19, 2020, respectively, Plaintiffs LPIL and ILGP sent Defendants written requests for relief from the petitioning requirements imposed on them under

4

Illinois law. (Verified Complaint ¶ 76.) To date, these Plaintiffs have received no response, except from Defendant State Board of Elections, which responded through counsel on March 23, 2020 to advise that it lacked authority to suspend enforcement of Illinois' petitioning requirements. (*Id.* ¶ 77.) Plaintiffs therefore urgently need the relief requested herein, to protect their speech, petitioning, voting, associational and equal protection rights as guaranteed by the First and Fourteenth Amendments. In the absence of such relief, Plaintiffs will suffer irreparable harm, because they are prohibited from petitioning and their respective candidates will be excluded from Illinois' 2020 general election ballot.

## I. Plaintiffs Are Entitled to Preliminary Relief.

To obtain a preliminary injunction, Plaintiffs must show that they have "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014) (citing *Ezell v. City of Chicago,* 651 F.3d 684, 694 (7th Cir. 2011)). "If this showing is made, 'the court weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest.'" *Id.* (quoting *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013)). The "equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id.* In First Amendment cases, "the likelihood of success on the merits is usually the decisive factor." *Wisconsin Right to Life, Inc.*, 751 F.3d at 830.[1]

---

[1] The substantive standard for issuing a temporary restraining order is essentially the same. *See Merrill Lynch, Pierce, Fenner & Smith v. Salvano*, 999 F. 2d 211, 214 (7th Cir. 1993); *see also Bryant v. Matvieshen*, 904 F. Supp.2d 1034, 1042 (E.D. Cal. 2012).

### A.     Plaintiffs Have No Adequate Remedy at Law and Will Suffer Irreparable Harm if the Court Does Not Grant Them Injunctive Relief.

Plaintiffs urgently need relief from this Court because they are required to obtain a statutorily prescribed number of voters' signatures on petitions by June 22, 2020, and if they fail to do so, Plaintiff ILGP's and Plaintiff LPIL's candidates and Plaintiff Throneburg will be excluded from Illinois' November 3, 2020 general election ballot. At the same time, Executive Order No. 2020-10 prohibits Plaintiffs from approaching voters for purposes of obtaining their signatures. Plaintiffs have requested that Defendants suspend Illinois' petitioning requirements, but Defendants have either declined or failed to respond to that request. Consequently, Plaintiffs have no adequate remedy except to seek the requested injunctive relief from this Court. *See Girl Scouts of Manitou v. Girl Scouts of America*, 549 F.3d 1079, 1095 (7th Cir. 2008) (a party has no adequate remedy at law where "traditional legal remedies, *i.e.*, money damages, would be inadequate"); *American Civil Liberties Union of Il. v. Alvarez ("ACLU of Il.")*, 679 F.3d 583, 589 (7th Cir. 2012) (in First Amendment cases, the "quantification of injury is difficult and damages are therefore not an adequate remedy") (citation omitted).

Plaintiffs will also suffer irreparable harm in the absence of injunctive relief. It is well-settled that "the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *ACLU of Il.*, 679 F.3d at 589 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Plaintiffs are suffering such harm now: the statutory petitioning period for Plaintiffs ILGP, LPIL and Throneburg started on March 24, 2020, but Executive Order No. 2020-10 prohibits them from commencing their petition drives. "Petition circulation … is 'core political speech,' because it involves 'interactive communication concerning political change.'" *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)). First Amendment protection is therefore "at

6

its zenith" with respect to Plaintiffs' right to circulate petitions in support of their respective candidates. *Id.* Consequently, each day that Illinois law prohibits Plaintiffs from commencing their petition drives, they suffer irreparable harm to their core First Amendment rights. *See Buckley*, 525 U.S. at 186; *Elrod*, 427 U.S. at 373.

Plaintiffs will suffer further injury to their First Amendment rights in the absence of relief because the candidates of Plaintiffs ILGP and LPIL and Plaintiff Throneburg will be excluded from Illinois' November 3, 2020 general election ballot. As the Seventh Circuit has explained:

> the impact of candidate eligibility requirements on voters implicates basic constitutional rights. The exclusion of candidates . . . burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens. Also, because voters can assert their preferences only through candidates or parties or both, . . . the right to vote is heavily burdened if that vote may be cast only for major-party candidates at a time when other parties or other candidates are clamoring for a place on the ballot.

*Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (citations, quotation marks and brackets omitted). Accordingly, the exclusion of Plaintiffs' respective candidates from Illinois' November 3, 2020 general election ballot will cause irreparable harm to Plaintiffs' voting, speech and associational rights.

      **B.**     **Plaintiffs Have a Strong Likelihood of Success on the Merits.**

The extraordinary circumstances from which this case arises make it any easy one to decide. Under Illinois law as it now exists, Plaintiffs have <u>no lawful procedure by which they may qualify their candidates for Illinois' November 3, 2020 general election ballot.</u> Plaintiffs are entitled to the relief requested on that basis alone. Plaintiffs are also entitled to the relief requested because Illinois' petitioning requirements, as applied here, cannot withstand constitutional scrutiny under the analytic framework the Supreme Court set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

1.  **Plaintiffs Are Entitled to Relief Because Illinois Has Failed to Provide Them With Any Procedure for Qualifying for the November 3, 2020 General Election Ballot.**

When states fail to provide candidates and parties with a procedure by which they may qualify for the ballot, the Supreme Court and lower federal courts have not hesitated to remedy the defect by placing candidates and parties on the ballot by court order. In 1976, for instance, several states provided no procedure for independent candidates to qualify for the ballot. In each of these states, independent presidential candidate Eugene McCarthy sought relief in federal court, and without exception the courts ordered that he be placed on the ballot. *See McCarthy v. Briscoe*, 429 U.S. 1317, 97 S. Ct. 10 (1976) (Powell, J. in Chambers) (placing McCarthy on Texas ballot); *McCarthy v. Askew*, 540 F.2d 1254, 1255 (5th Cir. 1976) (*per curiam*) (affirming order placing McCarthy on Florida's ballot); *McCarthy v. Noel*, 420 F. Supp. 799 (D. R.I. 1976) (placing McCarthy on Rhode Island ballot); *McCarthy v. Tribbitt*, 421 F. Supp. 1193 (D. Del. 1976) (placing McCarthy on Delaware ballot); *McCarthy v. Austin*, 423 F. Supp. 990 (W.D. Mich. 1976) (placing McCarthy on Michigan ballot). As Justice Powell observed in *McCarthy v. Briscoe*, the Supreme Court had followed the same procedure in 1968, when it ordered that several candidates who successfully challenged the constitutionality of Ohio's ballot access laws be placed on its ballot. *See McCarthy v. Briscoe*, *supra*, citing *Williams v. Rhodes*, 89 S. Ct. 1, 21 L.Ed.2d 69 (Stewart, J., in Chambers, 1968).

In 1980, Michigan had failed to enact a procedure for independent candidates to access the ballot following the decision in *McCarthy v. Austin*, *supra*, and two independent candidates running for president and vice-president filed suit. *See Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980). Once again, a federal court ordered that the independent candidates be placed on Michigan's ballot. *See id.* at 791-92. The issue arose again in 1984, because Michigan still had not enacted a

procedure for independent candidates to qualify for the ballot. An independent candidate for the State Board of Education filed suit, the district court again declared Michigan's ballot access scheme unconstitutional, and the Secretary of State was ordered to place the candidate on the ballot. *See Goldman-Frankie v. Austin*, 727 F.2d 603, 607-08 (6th Cir. 1984).

In *Williams*, the Supreme Court explained the rationale for federal courts to grant such relief: the Constitution does not permit states to restrict access to the ballot in a manner that "favors two particular parties – the Republicans and the Democrats – and in effect tends to give them a complete monopoly." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968)). Here, the State of Illinois – albeit with the unwanted intrusion of a global pandemic – has accomplished that same result. Illinois held its primary election as scheduled on March 17, 2020, and the Republican and Democratic nominees selected by means of that taxpayer-funded procedure are thereby qualified to appear on Illinois' 2020 general election ballot. Yet it is unlawful – a violation of Executive Order No. 2020-10 – for Plaintiffs and all other candidates and parties to engage in petitioning, which is the only procedure that Illinois provides for them to qualify for the general election ballot. The grounds for this Court's intervention could not be clearer.

Illinois did not cause the outbreak of the COVID-19 virus, of course, but that is immaterial. Illinois is constitutionally required to provide its citizens with a lawful procedure to qualify for its general election ballot, and it has failed to do so. Certainly, Illinois could have adopted measures to remedy this constitutional defect. Governor Pritzker has issued several executive orders that impose sweeping changes to Illinois law – and which incidentally make it impossible for Plaintiffs to qualify for Illinois' November 3, 2020 general election ballot – but Defendants have either declined or failed to respond to Plaintiffs' requests for relief. (Verified Complaint Ex. 2.) Under these circumstances, Plaintiffs are entitled to an order from this Court placing them on the ballot.

### 2. Illinois' Statutory Scheme Cannot Withstand Constitutional Scrutiny as Currently Applied.

Plaintiffs are also entitled to relief because Illinois' statutory scheme, as currently applied, cannot withstand constitutional scrutiny under the Supreme Court's *Anderson-Burdick* analytic framework. Under that analysis, a reviewing court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. This framework establishes a "flexible standard," according to which "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that imposes "severe" burdens are subject to strict scrutiny. *See id.* (citations omitted). But in every case, "However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 128 S.Ct. 1610, 1616 (2008) (citation and quotation marks omitted).

As the Seventh Circuit has explained, "[m]uch of the action takes place at the first stage of *Anderson's* balancing inquiry," because the severity of the burden imposed is what determines whether strict scrutiny or a less demanding level of review applies. *Stone v. Board of Election Com'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014) (citing *Burdick*, 504 U.S. at 534). Here, the burden imposed could not be more severe: Illinois law as currently applied prohibits

Plaintiffs and all other minor party and independent candidates from seeking to qualify for the general election ballot. Such "complete exclusion," the Seventh Circuit has concluded, constitutes a "severe" burden on the First and Fourteenth Amendment rights of the affected voters, candidates and parties. *Lee*, 463 F.3d at 768, 770.

"Restrictions that 'severely' burden the exercise of constitutional rights must be 'narrowly drawn to advance a state interest of compelling importance.'" *Lee*, 463 F.3d at 768 (quoting *Burdick*, 504 U.S. at 434). But no state interest, compelling or otherwise, is sufficient to justify Illinois' complete exclusion of all minor party and independent candidates from its general election ballot. In *Lee*, for example, the Seventh Circuit acknowledged that promoting political stability and preventing ballot clutter "are important state interests," but it found them insufficient to justify the challenged restrictions. *Id.* at 770-71. Such interests, the Court concluded, do not "'permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence,' and that is effectively what Illinois has done." *Id.* at 771 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 366-67 (1997)).

In this case, the burden imposed by Illinois law is even more severe than the restrictions challenged in *Lee*. The plaintiff in *Lee* challenged a 10-percent signature requirement, early filing deadline and the disqualification of petition signers from voting in the primary election. *See id.* at 765. The Seventh Circuit concluded that such restrictions imposed a severe burden "[w]hether measured by comparison to the ballot access requirements in the other 49 states or by the stifling effect they have had…" *Id.* at 768-69 (finding that no candidate had complied with the challenged provisions in the 25 years since their enactment). As onerous as those restrictions were, however, it was at least theoretically possible to comply with them. Here, by contrast, Plaintiffs are prohibited by law from circulating petitions, which is the only procedure by which they may

11

qualify for Illinois' general election ballot. Such a prohibition does not merely have a "stifling effect" on Plaintiffs' ability to participate in Illinois' electoral process but categorically excludes them.

To be sure, Illinois has a strong and even compelling interest in protecting the public health during a pandemic. But no court has ever upheld a ballot access restriction that categorically excludes all candidates except Republicans and Democrats. Because petition circulation is prohibited under Illinois law, and Illinois has failed to establish an alternative procedure by which minor party and independent candidates may qualify for its general election ballot, Illinois' petitioning requirements are unconstitutional as applied to Plaintiffs in the 2020 general election cycle.

### C. The Balance of Harms Weighs Strongly in Plaintiffs' Favor.

The harm that Plaintiffs will suffer in the absence of the requested relief is plain: their candidates will be excluded from Illinois' November 3, 2020 general election ballot; voters will be deprived of the opportunity to hear their political views and to associate with and support them; GPIL and LPIL will be prevented from disseminating and building support for their platforms among the general electorate; and GPIL and LPIL will be denied the opportunity to win sufficient electoral support to retain ballot access in the next election cycle. The Supreme Court has expressly relied on such harms to justify granting the relief that Plaintiffs request here. *See*, *e.g.*, *Norman v. Reed*, 502 U.S. 279, 288-89 (1992); *Anderson*, 460 U.S. at 793-94; *Williams*, 393 U.S. at 30-31. The Court's admonition in *Williams* bears repeating:

> The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.

*Williams*, 393 U.S. at 31. This Court's intervention is amply justified to prevent such harm to Plaintiffs' "most precious freedoms." *Id.* at 30.

By contrast, Defendants will not suffer any harm if the Court grants Plaintiffs the requested relief. ILGP and LPIL have qualified for Illinois' general election ballot with regularity in past election cycles, and there is no evidence that Illinois sustained any harm to its electoral processes as a result of their participation. On the contrary, as the Supreme Court has repeatedly observed, "[h]istorically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream." *Anderson*, 460 U.S. at 794; *see Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979); *Sweezy v. New Hampshire,* 354 U. S. 234, 250-251 (1957). Thus, the continued participation of ILGP and LPIL in Illinois' electoral process will benefit, not harm, Defendants and the voters of Illinois generally.

Similarly, Plaintiff Throneburg has demonstrated success in qualifying for the ballot as an independent candidate. In fact, Plaintiff Throneburg was elected to the Bureau County Board in 2003. His participation in Illinois' 2020 general election as an independent candidate for State Senate will not harm Defendants in any way.

Moreover, the relief that Plaintiffs request here is precisely the same relief that other states have granted of their own volition. On March 30, 2020, for example, Vermont enacted legislation providing that "a person shall not be required to collect voter signatures in order to have the person's name placed on any ballot in the year 2020." *See* An Act Relating to Government Operations in Response to the COVID-19 Outbreak, HB 681 (2020), available at https://legislature.vermont.gov/Documents/2020/Docs/BILLS/H-0681/H-0681%20As%20Passed%20by%20Both%20House%20and%20Senate%20Official.pdf (accessed

13

April 2, 2020). The Secretary of State of Connecticut has likewise recommended to that state's Governor and Legislature that its petitioning requirements be eliminated, and that all currently-qualified third parties in the state be granted "automatic ballot access for all races in November…" (Verified Complaint. Ex. 1.)

No harm will come to Defendants or the State of Illinois if the Court grants similar relief here. On the contrary, Defendants will be relieved of the considerable burden of validating petition signatures during the crunch of the election cycle. The balance of harms therefore weighs strongly in Plaintiffs' favor.

### D.     The Requested Relief Is in the Public Interest.

Preliminary relief will benefit the public because it will protect the First Amendment rights of Illinois voters to cast their votes effectively and to associate with candidates and parties they support. As the Seventh Circuit has repeatedly recognized, "injunctions protecting First Amendment freedoms are always in the public interest." *ACLU of Il.*, 679 F.3d at 590 (quoting *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006) (footnote omitted)). This factor therefore also weighs in Plaintiffs' favor.

### E.     No Security is Required.

The Seventh Circuit has observed that security is not mandatory under Rule 65(c), and can be dispensed with in the discretion of the court. *See Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972); *see also Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).  No security is needed in this case, as it threatens no financial harm to Defendants.

14

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to issue preliminary relief.

Respectfully submitted,

/s/ Scott K. Summers
Scott K. Summers
P.O. Box 430
Harvard, IL 60033
Mobile: 815-403-8411
Fax: 815-986-1333
Scott@scottksummers.com
Counsel of Record

| | |
|---|---|
| Oliver B. Hall | Mark R. Brown |
| CENTER FOR COMPETITIVE DEMOCRACY | 303 East Broad Street |
| P.O. Box 21090 | Columbus, OH 43215 |
| Washington, D.C. 20009 | (614) 236-6590 |
| (202) 248-9294 | (614) 236-6956 (fax) |
| oliverhall@competitivedemocracy.org | mbrown@law.capital.edu |
| *Pro Hac Vice Pending* | *Pro Hac Vice Pending* |
| | |
| | *Attorneys for Plaintiffs* |

15

## Certificate of Service

I certify that on this day, April 3, 2020, copies of this Motion and accompanying Verified Complaint were served on the following:

David W. Van de Burgt
Division Chief, Government Representation
Illinois Attorney General's Office
100 West Randolph Street
Chicago, IL 60601
Phone: 312-814-2822
Email: DVandeBurgt@atg.state.il.us

Gary Caplan
Deputy General Counsel
Office of the Governor
Gary.Caplan@illinois.gov

Leigh Richie
Associate General Counsel
Office of the Governor
Leigh.richie@illinois.gov

*Counsel for Defendant J.B. Pritzker*


Marni M. Malowitz
General Counsel
State Board of Elections
100 W. Randolph St., 14th Floor
Chicago, IL 60654
Phone: 312-814-6462
MMalowitz@elections.il.gov

*Counsel for Defendants State Board of Elections Board Members*


/s/ Scott K. Summers
Scott K. Summers