# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION (CHICAGO)

| | |
|---|---|
| LIBERTARIAN PARTY OF ILLINOIS, ILLINOIS GREEN PARTY, DAVID F. BLACK, SHELDON SCHAFER, RICHARD J. WHITNEY, WILLIAM REDPATH, BENNETT W. MORRIS, MARCUS THRONEBURG, <br><br>    Plaintiffs, <br><br>and ALEXANDER (AJ) RUGGIERI, <br><br>    Intervenor-Plaintiff, <br><br>vs. <br><br>J.B. PRITZKER, in his official capacity as Governor of Illinois, <br><br>and WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASSANDRA B. WATSON, WILLIAM R. HAINE, IAN K. LINNABARY, CHARLES W. SCHOLZ, WILLIAM M. MCGUFFAGE, in their official capacities as Board Members for the Illinois State Board of Elections, <br><br>    Defendants. | Case No. 1:20-cv-02112 <br><br>Hon. Charles R. Norgle |

## ALEXANDER (AJ) RUGGIERI'S MOTION TO INTERVENE

**I.   INTRODUCTION**

The underlying action before this Court is intended to address the issues presented by the necessity of independent and new party candidates to collect petition signatures to access the 2020 General Election ballot in light of the COVID 19 pandemic and the series of Executive Orders issued by Governor Pritzker aimed at addressing COVID 19 public health concerns. The pandemic and those Executive Orders have had the effect of making collecting petition signatures more difficult than usual.

In light of these conditions, this Court provided independent and new party candidates throughout the entire State of Illinois with relief, entering an Order allowing those candidates to (1) access the ballot with only 10% of the signatures otherwise required; (2) collect signatures remotely; and (3) file their nomination papers by July 20, 2020, rather than June 21, 2020. (1:20-cv-02112 Docket #26, 36 "the Order")

Intervenor Alexander (AJ) Ruggieri ("Ruggieri") is a Republican candidate for the Illinois State Senate in the 52nd Legislative District. Ruggieri was appointed to fill a vacancy in nomination following the March 17, 2020 Primary Election. Pursuant to Section 7-61 of the Illinois Election Code, once appointed, Ruggieri was required to collect the statutory minimum number of petition signatures (1000) and to file them no later than June 1, 2020. Like the independent and new party candidate plaintiffs in this case, Ruggieri's signature collection has been materially adversely affected by the COVID 19 pandemic and the pendency of Governor Pritzker's Executive Orders.

While Ruggieri and his supporters used their best efforts to collect signatures on his behalf, and did file 1,152 petition signatures on June 1, 2020, an objection to his nomination papers threatens to keep Ruggieri from the General Election ballot. On June 19, 2020, staff at the Illinois State Board of Elections made an initial determination that Ruggieri's nomination papers contain, at most, 949 valid petition signatures. Accordingly, Ruggieri seeks to intervene in this case so that he may be granted relief commensurate with that granted to independent and new party candidates, particularly including those in the 52nd Legislative District.

This Motion is not brought on an emergency basis, but presents emergent issues, as it is anticipated that the SBE will meet on July 20, 2020, at the latest, and at that time enter an order as to whether Ruggieri may appear on the General Election ballot.

## II. BACKGROUND

### A. Typical Ballot Access Requirements

In Illinois, established party candidates compete in party primaries to earn a spot on the general election ballot. Independent and new party candidates do not compete in primaries, but rather are required to collect a greater number of petition signatures than established party candidates in order to earn a spot on the general election ballot. For example, established party candidates for the Illinois House and Illinois Senate are required to gather 500 and 1,000 signatures respectively in order to access their party's primary ballot. *See* 10 ILCS 5/8-8. New party and independent candidates for those same offices, by contrast, are required to submit a number of signatures equal to or greater than 5% of the votes cast in a political subdivision at the preceding general election. *See* 10 ILCS 5/10-2, 10-3. For General Assembly candidates (prior to the entry of the Order), that minimum threshold varied from 2,930 to 5,580 signatures for State Senate candidates and from 990 to 2,700 signatures for Illinois House candidates, depending on the district.

Prior to entry of the Order, an independent or new party candidate for State Senate in the 52nd Legislative District would have been required to submit a minimum of 4,523 to access the General Election ballot. Under the Order, those candidates are required to collect and submit only 452 signatures, while an established State Senate party candidate like Ruggieri can only file if he gets 1000 signatures.

The Illinois Election Code prescribes minimum signature requirements for new party and independent candidates that are higher than those for established party candidates who must first

compete in a party primary. Like established party candidates, new party and independent candidates must collect petition signatures of electors in order to demonstrate a modicum of support sufficient to justify placing their names on the general election ballot alongside established party candidates. However, because neither new party candidates nor independent candidates have to first win a party primary before making the general election ballot, they are required to collect more signatures than established party candidates.

The disparity in the required number of signatures between established party candidates and new party and independent candidates is grounded in the notion that "ballot access laws serve the important, interrelated goals of preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of elections." *Navarro v. Neal*, 716 F.3d 425, 431 (7th Cir. 2013). This Court has repeatedly affirmed the constitutionality of Illinois' ballot access laws. *See, e.g., Tripp v. Scholz*, 872 F.3d 857, 871 (7th Cir. 2017); *Nader v. Keith*, 385 F.3d 729, (7th Cir. 2004).

### B. Ballot Access Under COVID-19 Conditions

This election cycle, the circulation period for independent and new party candidates was hampered by the effects of COVID 19. Accordingly, independent and new party candidates petitioned this Court and were granted relief providing that independent and new party candidates throughout the entire State of Illinois may (1) access the ballot with only 10% of the signatures otherwise required; (2) collect signatures remotely; and (3) file their nomination papers by July 20, 2020, rather than June 21, 2020. (1:20-cv-02112 Document #: 26, 36 "the Order")

However, independent and new party candidates are not alone in having to collect petition signatures in COVID 19-affected conditions. Certain established party candidates, like Ruggieri, also were required to collect petition signatures while under the effects of COVID 19 and the

Governor's successive "stay at home" orders. Where no candidate of an established party is nominated at a primary election, either by petition or write-in, an established party may fill that "vacancy in nomination" by appointing a candidate who then must collect and file signatures of party electors. 10 ILCS 7-61. Candidates who are nominated after the primary in this manner must collect the same minimum number of signatures as established party candidates for that same office who run in primary elections, and must file their petitions within 75 days after the primary election. *Id.* This election cycle, such established party candidate filings were required to be made no later than June 1, 2020. Governor Pritzker's successive Executive Orders required that Illinoisans "stay at home" throughout the entire amount of time allotted to established party candidates to collect signatures and to file petitions to fill vacancies in nomination.

Having been appointed to fill a vacancy in the Republican nomination for State Senator for the 52nd Legislative District after the March 17, 2020 primary, Ruggieri was required to gather petition signatures under the same COVID 19-hampered conditions as independent and new party candidates. Ruggieri used his best efforts and did file his nomination papers on June 1, 2020, including petitions containing 1,152 petition signatures. (Ruggieri Dec. ¶ 5, 6.)

On June 8, 2020, a resident of the 52nd Legislative District filed an objection with the Illinois State Board of Elections ("SBE") to Ruggieri's nomination papers under Section 10-8 of the Election Code on the grounds that Ruggieri's petitions contained fewer than the statutory minimum of 1,000 valid petition signatures. (Ruggieri Dec. ¶ 7.) On June 19, 2020, the SBE conducted an exam of the objection to Ruggieri's petition signatures. (Ruggieri Dec. ¶ 8.) The initial result of the SBE exam has indicated that Ruggieri's petitions contain 949 presumptively valid signatures, which is below the statutory minimum for established party candidates for State Senate. (Ruggieri Dec. ¶ 8.)

Having used his best efforts to gather the existing statutory minimum number of signatures under COVID-affected conditions, Ruggieri now wishes to intervene in this case to ask this Court for the same relief granted by this Court to new party and independent candidates in the 52nd Legislative District, who are likewise forced to gather signatures under similar circumstances. In the event this motion is granted, Ruggieri will accordingly file a petition to enjoin the SBE from enforcing the existing statutory minimum signature requirement for established party candidates for State Senate.

### III.  ARGUMENT

Intervention under FED R. CIV. P. 24 provides a means for non-parties to "protect interests that might otherwise be adversely affected." *iWork Software, LLC v. Corporate Express, Inc.*, 2003 WL 22494851 at *1 (N.D. Ill. 2003). Rule 24 allows for two types of intervention: (1) intervention as of right; and (2) permissive intervention. Irrespective of the type of intervention sought, "Rule 24 should be liberally construed *in favor of potential interveners*." *Id.* (emphasis added). Ruggieri qualifies for intervention under both standards.

#### A.  Ruggieri is Entitled to Intervene as a Matter of Right

Rule 24(a)(2) allows for intervention as a matter of right, and the Seventh Circuit has determined that intervention as a matter of right *must* be granted where the following four criteria are met: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties of the petition." *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Shea v. Angulo*, 19 F.3d 343, 344 (7th Cir. 1994)). As demonstrated below, Ruggieri meets these four requirements.

##### 1)  Ruggieri's Petition is Timely

This Motion is timely, brought almost immediately after the SBE staff's June 19 initial determination on the validity of Ruggieri's petition signatures. As the Seventh Circuit has noted, the test for timeliness "is essentially one of reasonableness: '[P]otential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich,* 64 F.3d at 321 (quoting *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994) (internal citations omitted)). Four factors are considered when determining whether a petition to intervene is timely: (1) the length of time the intervenor knew or should have known of his interest in this case; (2) the prejudice to the original party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances. *See Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) (citing *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985)).

Review of each of these factors reveals that Ruggieri's petition meets the timeliness test. Given that he filed his petition almost immediately after the SBE has made an initial determination that Ruggieri's nomination papers do not contain the statutory minimum number of valid petition signatures, Ruggieri's petition is unquestionably timely. Further, Ruggieri did not approach this Court until he clearly needed relief. There is no credible claim of prejudice to any original party because Ruggieri did not delay this petition and all original parties received their own ballot access relief. Ruggieri, by contrast, will be prejudiced if this Motion is denied, as he will have been required to collect his signatures under the very same conditions as independent and new party candidates, but without similar relief. Without leave to intervene, Ruggieri cannot adequately represent his interests and no existing party can do so on his behalf.

### 2) Ruggieri Maintains Valid Interests in This Action

A prospective intervenor's interest in an action must be "'direct, significant, and legally protectable.'" *Security Ins. Co. of Hartford v. Schipporeit, Inc., et. al.*, 69 F.3d 1377, 1380 (7th

Cir. 1995) (quoting *Am. Nat'l Bank v. City of Chicago*, 856 F.2d 144, 146 (7th Cir. 1989)). The interest must be "something more than a mere 'betting' interest … but less than a property right…." *Id.* at 1381.

Ruggieri has a direct and significant interest in this litigation. As an established party candidate for State Senate in the 52nd Legislative District, where he also resides, Ruggieri is affected by the Order insofar as it permits independent and new party candidates for State Senate (his General Election opponents) to access the ballot in a dramatically relaxed fashion as compared to established party candidates like himself. If the SBE's decision on the objection to the validity of his supporting signatures stands, Ruggieri will not have the necessary number of 1000 signatures needed for candidates like himself to access the ballot while other candidates with the same or fewer signatures will make the ballot thanks to the Order's disparately relaxed standards. Thus, Ruggieri has a "direct, significant, and legally protectable" interest in joining this case.

### 3) Ruggieri's Interests Have Been Impaired By The Order Entered In This Case

The Order impairs Ruggieri's First Amendment and Equal Protection rights. Impairment "depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors." *Meridian Homes Corp v. Nicholas W. Prassas & Co.*, 201, 204 (7th Cir. 1982). Here, the Order relaxes ballot access requirements for new party and independent candidates, but does not do likewise for established Republican Party candidates like Ruggieri who had to collect petition signatures under precisely the same difficult circumstances. As relief has been granted to Ruggieri's General Election opponents and not to him, there is no question that the Order disparately impairs Ruggieri's interests.

### 4) The Existing Parties Do Not Adequately Represent Ruggieri's Interests.

The existing parties do not adequately represent Ruggieri's interests. Although a would-be intervenor has the burden to demonstrate that the representation of his interests may be inadequate, the Seventh Circuit has held that such a burden is minimal. *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F. 2d 1256, 1261 (7th Cir. 1983).

The current plaintiffs represent the interests of new parties and independent candidates who, as political opponents, have interests that are at odds with Ruggieri. The current defendants are the Governor and the State Board of Elections, who are charged solely with overseeing the administration of the election. No part of any Defendants' interest includes vindicating the rights of a private established political party candidate. Ruggieri's interests therefore will not be and have not been adequately protected by any current party. *See See Maxum Indemnity Co. Security Insur. Co. of Hartford v. Eclipse Manufacturing Co.*, 06-cv-4946, 2008 WL 4831734 at *4 (N.D. Ill. 2008) (granting motion to intervene because "[n]o other party is in precisely the same position as [the intervening party]").

Because Ruggieri satisfies each of the criteria necessary to intervene as a matter of right under FED R. CIV. P. 24 (a)(2), his Petition to Intervene should be granted.

### B. Alternatively, This Court Should Exercise Its Discretion to Permit Ruggieri to Intervene in This Action.

If the Court were to find that Ruggieri is not entitled to intervene as a matter of right, it should exercise its discretion to permit intervention for the same reasons discussed above. The Court may permit permissive intervention in instances where the potential intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When determining whether to allow permissive intervention, "court[s] must consider

whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. at 24(b)(3).

All of these factors weigh in favor of Ruggieri's intervention. Ruggieri has a claim that shares common questions of law and fact with the main action. Rather than presenting new questions of law or fact, Ruggieri merely seeks to intervene and advocate for himself. Further, as discussed above, no undue delay or prejudice will result from allowing Ruggieri to intervene in this proceeding. As such, permissive intervention, as an alternative, is appropriate here.

### IV. CONCLUSION

For these reasons, Ruggieri asks the Court to grant his Motion to intervene in this matter.

Respectfully submitted,

Alexander (AJ) Ruggieri

/s/ John Fogarty, Jr.
Counsel for the Intervenor

John G. Fogarty, Jr.
(ARDC No. 6257898)
Clark Hill PLC
130 E. Randolph, Suite 3900
Chicago, Illinois 60601
(773) 680-4962 (cell)
(773) 681-7147 (fax)
jfogarty@clarkhill.com