# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

June 21, 2020

*By the Court*

No. 20-1961

| | |
|---|---|
| LIBERTARIAN PARTY OF ILLINOIS, *et al.*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiffs-Appellees*, | |
| *v.* | No. 20-cv-2112 |
| WILLIAM J. CADIGAN, individual member of the Illinois State Board of Elections, *et al.*, | Rebecca R. Pallmeyer, *Chief Judge*. |
| *Defendants-Appellants*. | |

**O R D E R**

Appellants, individual members of the Illinois State Board of Elections (the "Board"), ask this court to stay enforcement of the district court's preliminary injunction. We deny the motion because the Board has not shown that it would be irreparably harmed by injunctive relief that it initially agreed to and because staying the preliminary injunction at this late date would result in clear harm to the plaintiffs who have relied on its terms.

On April 3, 2020, the Libertarian Party of Illinois, the Illinois Green Party, and several individuals who wish to run for state or federal office in the November 2020 election or vote or gather signatures for independent candidates, sought injunctive relief in the district court. They sought to enjoin or modify Illinois's signature collection requirements for independent and third-party candidates in light of the public health emergency caused by the novel coronavirus COVID-19 and Governor Pritzker's

Case: 1:20-cv-02112 Document #: 47 Filed: 06/23/20 Page 2 of 5 PageID #:551
Case: 20-1961   Document: 23   Filed: 06/21/2020   Pages: 5

No. 20-1961                                                                                              Page  2

emergency executive orders that effectively shut down the state. In its briefing, the Board agreed that some relief was warranted due to the pandemic. It proposed delaying the filing deadline by two weeks until July 6, 2020, and reducing the signature requirement first to 50% and later to 33% of the number required by the Illinois Election Code. After several hearings with the district court's emergency judge, the parties reached agreement and submitted a proposed order, apparently drafted by the Board.

The district court noted that a court considering a challenge to state election laws must carefully balance "'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The district court said it did not need to devote significant attention to constitutional questions, however, because the parties "proposed an order that grants appropriate relief in these unprecedented circumstances." Opinion and Order at 7-8. The district court found that the combination of restrictions on public gatherings imposed by Governor Pritzker's shelter-at-home order, which started at nearly the same time as the window for gathering signatures, and the in-person signature requirements in the Illinois Election Code was "a nearly insurmountable hurdle for new party and independent candidates attempting to have their names placed on the general election ballot." *Id.* at 7. The district court concluded that the parties' agreed order would ameliorate plaintiffs' difficulty meeting the signature requirement while accommodating the state's interest in ensuring that only parties with measurable public support will gain access to the 2020 general election ballot. The district court adopted the parties' proposed order as the preliminary injunction. Entered on April 23, 2020, the preliminary injunction addressed four main points:

> (1) Plaintiff political parties are permitted to nominate candidates without petitions in any race in which they had nominated a candidate in either 2016 or 2018, and the three individual candidates are permitted to appear on the ballot for any office they qualified for in 2016 or 2018 without a petition;

> (2) New political party and independent candidates not subject to item (1) are required to file nomination petitions signed by not less than 10% of the statutory minimum number required;

(3) Petition signers are permitted to affix their signatures to a petition electronically, by using a computer mouse, a stylus, or their finger; and

(4) The statutory petition filing deadline is moved from June 22, 2020, to August 7, 2020.

Despite agreeing to each of these terms, the Board filed a motion to reconsider on May 8. It argued that after consulting with local election officials, it believed the later filing deadline would impact its ability to conduct an accurate and orderly election. It asked the district court to amend its preliminary injunction order and direct the Board to establish appropriate ballot access requirements for independent and new political party candidates. Alternatively, the Board asked the court to move the deadline for candidate nomination and petition filings from August 7 to July 6 and set the minimum petition signature threshold at 25% of the statutory minimum. On May 15, after a hearing, the district court granted the motion in part; it moved the deadline for candidate nomination and petition filings to July 20, but denied the motion to reconsider in all other respects.

The Board then waited until June 6, a Saturday, to file its notice of appeal. On June 9 it asked this court to stay the preliminary injunction order, as modified on May 15, and to drastically expedite briefing. Although Federal Rule of Appellate Procedure 8(a)(1) says a "party must ordinarily move first in the district court" before seeking a stay pending appeal, the Board did not do so. It argues that moving first in the district court would be impractical, see FED. R. APP. P. 8(a)(2)(A)(i), because the district court already denied its request to be allowed to establish appropriate ballot access requirements.

When deciding whether to enter a stay, this court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Board argues that it is likely to succeed on the merits of its appeal because the district court exceeded its authority when it dictated how Illinois must conduct its elections. We are mindful that the Constitution grants states "broad power" to conduct elections. Art. I, § 4, cl. 1; see *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). As relevant to this case, however, a state's broad power also encompasses the ability to agree to the terms of a preliminary injunction. The Board also argues that its recent receipt of

nominating petitions from twelve Republican and Democratic candidates shows that the statutory ballot access requirements do not categorically exclude third-party candidates from the ballot. But this is the type of new evidence that should have been presented to the district court in the first instance.

Despite the Board's initial agreement to the injunction, the possibility that it would suffer irreparable injury absent a stay gave us pause. We ordered a supplemental expedited submission from the Board so it could explain with precision and with references to supporting evidence what irreparable harm it believes will result absent a stay, and directed the appellees to respond. In its supplemental submission, the Board provides more details about specific election deadlines, particularly that Illinois is required by statute to transmit requested absentee ballots to military and overseas voters at least 45 days before the election. *See* 52 U.S.C. § 20302(a)(8). The Board submitted two consent decrees entered after Illinois election officials failed to meet this deadline in 2010 and 2013, and argues that the terms of the preliminary injunction significantly increase the risk of another adverse action by the Justice Department.

We find the Board's arguments and evidence insufficient to demonstrate that it will suffer irreparable harm absent a stay. After independent candidates submit their petitions, currently due on July 20, voters have five days to object to a candidate's nomination papers and the Board must then hold a hearing. The Board says it has historically taken as long as five weeks to resolve voter objections, and relies on a declaration by Steve Sandvoss, the Board's Executive Director. But neither Sandvoss nor the Board provide specific examples or evidence to support this assertion. The Board also relies on declarations from two Illinois county election officials. These officials said that, based on their personal knowledge and professional experience, the lower signature threshold will lead to an increased number of non-viable candidates and petition objections and it is unlikely that all candidate objections will be resolved in time for timely printing of ballots, thus impeding their ability to meet the deadline for transmitting ballots to military and overseas voters by the September 18 statutory deadline. Notably, the three declarations were prepared in support of the Board's motion for reconsideration when the petition deadline was August 7, two weeks later than the deadline the Board seeks to stay, and are based on the officials' experiences with elections unaffected by a global pandemic. Further, the Board was aware of the September 18 deadline for mailing military and overseas ballots when it agreed to the terms of the preliminary injunction and there is no evidence that Illinois's previous difficulty meeting the deadline was the result of later petition deadlines. And as the appellees point out in their supplemental submission, at least 37 states have candidate

No. 20-1961 Page 5

filing deadlines later than Illinois's current July 20 deadline, and routinely comply with the deadline for mailing military and overseas ballots. We conclude that none of the evidence submitted by the Board shows that the July 20 filing deadline or the reduced signature requirement is likely to impede election officials' ability to meet the deadline for transmitting ballots to military or overseas voters.

In contrast, the appellees have provided evidence showing that they would be significantly injured if we stayed the preliminary injunction. First, the injunction eliminated the petition requirement for Green Party and Libertarian Party candidates in any race in which the party had nominated a candidate in 2016 or 2018. As a result, those candidates have not gathered signatures and would be unable to do so by the statutory petition deadline. Second, other independent candidates are in the process of collecting a lower number of petition signatures in reliance on the preliminary injunction. Five of these candidates prepared declarations saying they would be excluded from the ballot if they were required to collect a larger number of signatures as a result of current restrictions on public gatherings and voters' reasonable apprehension about close contact. These difficulties are furthered by the lack of adequate notice from the state.

The Board asserts in its motion for stay that it, "not the federal court, is in the best position to determine the necessary election modifications that will balance the rights of candidates to access the ballots with the public interest in limiting the field of candidates to avoid ballot confusion." But nowhere in its motions papers does it explain what, if any, changes it would make to the statutory petition requirements to ensure that independent candidates are not excluded from the ballot. Nor does it acknowledge the serious safety concerns and substantial limitations on public gatherings that animated the parties' initial agreement and persist despite some loosening of restrictions in recent weeks. The Board has not made a strong showing that it is likely to succeed on the merits of its appeal, given its initial agreement to the terms of the preliminary injunction. It has also failed to show that the balance of harms favors a stay. Accordingly, the motion for stay is DENIED.

In light of this ruling and the approaching petition deadline, the parties shall file by July 6, 2020, statements of position addressing whether further briefing or oral argument are necessary.