# EXHIBIT 1

FILED
8/17/2020 2:59 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020COEL000018
Calendar, 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, COUNTY DIVISION

| | |
|---|---|
| Germaine Light,<br><br>                Petitioner,<br><br>vs.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS, THE ILLINOIS STATE OFFICERS ELECTORAL BOARD, and ITS MEMBERS; CHARLES SCHOLZ, IAN K LINNABARY, WILLIAM M. MCGUFFAGE, WILLIAM CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASANDRA B. WATSON, and WILLIMA R. HAINE, individually and in their official capacities, and ALEXANDER "AJ" RUGGIERI;<br><br>                Respondents. | Case No.:<br><br>(Petition for Judicial Review of Final Decision in 20 SOEB 500 before the State Officers Electoral Board) |

**PETITION FOR JUDICIAL REVIEW**
**UNDER SECTION 10–10.1 ILLINOIS ELECTION CODE**

Now comes the Petitioner, Germaine Light, by and through her attorneys, Andreou & Casson, Ltd., and submits this Petition for Judicial Review of the decision of the Respondents, the ILLINOIS STATE BOARD OF ELECTIONS, the STATE OFFICERS ELECTORAL BOARD, CHARLES SCHOLZ, IAN K LINNABARY, WILLIAM M. MCGUFFAGE, WILLIAM CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASANDRA B. WATSON, and WILLIMA R. HAINE, and ALEXANDER "AJ" RUGGIERI, individually and as members of the STATE OFFICERS ELECTORAL BOARD (hereinafter "Electoral Board"). Relief is also sought against ALEXANDER "AJ" RUGGIERI as a candidate.

In support of this Petition, Plaintiff states as follows:

FILED
8/17/2020 2:59 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020COEL000018
Calendar, 5

## INTRODUCTION

1. Petitioner is a duly registered voter and resident of the City of Danville, Illinois. Petitioner timely filed an Objection with the Electoral Board against the candidacy of ALEXANDER "AJ" RUGGIERI, candidate for the office of STATE SENATOR FOR THE 52ND LEGISLATIVE DISTRICT (hereinafter "Candidate"). The Candidate is named as a Respondent herein to subject her to the jurisdiction of this Court and give him notice of the pendency of this matter and an opportunity to be heard.

2. Respondents, The Illinois State Board of Elections, the State Officers Electoral Board and its constituent members are named in her capacity as their capacities as members of the SOEB with the duty to certify names of candidates for the office and conduct the election for the General Election to be held November 3, 2020, and is named here for relief only. Respondent ISBE is statutorily required to certify, print and distribute the ballots for the election for the candidates for the office at issue herein.

3. This Petition is brought pursuant to the Illinois Election Code. 10 ILCS 5/10-10.1 (2018).

4. Petitioner is a registered voter in the County of Vermillion, Illinois, and has standing thereby and through her interest that the laws governing the filing of nomination papers for the office of Illinois State Senator for the 52nd Illinois Senate District, are properly complied with, and that only qualified candidates appear on the General Election ballot for said office as candidates for the November 3, 2020 General Election.

5. In her Objection, Petitioner asserted that the Candidate had not complied with the provisions of Illinois Election Code, specifically in that the Candidate failed to file sufficient valid nomination signatures from qualified electors, to wit: Pursuant to state law, nomination papers for the election for the office of State Senator for the 52nd State Senate District to be voted

upon at the November 3, 2020 General Election, in the State of Illinois, must contain the signatures of not fewer than 1000 duly qualified, registered and legal voters of said District collected in the manner prescribed by law.

6. Further, the Candidate filed with the Board a total of 1152 signatures of which only 949 were valid signatures.

7. The Board Conducted a records examination of the challenged nominating petitions. As a result of that examination, the Board determined that of the 1,152 signatures submitted by the Candidate, 203 were invalid, leaving a total of 949 valid signatures.

8. The Petitioner filed her Motion for Summary Judgment, on June 22, 2020. On June 28, 2020, the Candidate filed a response to the Objector's Motion for Summary Judgment. On July 2, 2020, the Objector filed its Reply. On July 13, 2020, the Hearing Officer issued a Supplemental Report and Recommendation. The Recommendation grants the Objector's motion to Strike the Candidate's Response to Objector's Motion for Summary Judgment, grants the Objector's Motion for Summary Judgment, and sustained the objection to the certification of Candidate Ruggieri.

9. The Candidate did not contest and the SOEB did not challenge the finding of the Hearing Officer that the Candidate failed to comply with the signature requirement of Section 10 of the Illinois Election Code.

10. On August 3, 2020, argument was heard before the SOEB. The SOEB failed to sustain the findings of the Hearing Officer, thus rejecting the objections of the Petitioner

STANDARD OF REVIEW

11. In reviewing decisions of an electoral board, questions of law are reviewed de novo, while mixed questions of law and fact are reviewed under the clearly erroneous standard.

Cinkus v. Stickney Mun. Officers Electoral Bd., 228 Ill. 2d 200, 210 (2008). "[A]n agency's interpretation of the meaning of the language of a statute constitutes a pure question of law … [and] the court's review is independent and not deferential." Id.

12. This case rests on the interpretation of the Election Code, 10 ILCS 5/7-10.2, by the Electoral Board, and thus the review of the Final Decision by this Court is de novo.

13. On June 3, 2020, the Electoral Board assigned the matter to a Hearing Officer, who received motions and heard oral argument, ultimately submitting a Supplemental Report and Recommended Decision on July 13, 2020 (the "Hearing Officer's Report").

14. On August 3, 2020, the Electoral Board and its individual members personally held a hearing on the objections. On August 4, 2020 the Electoral Board entered a final order overruling the Petitioner's objection to the Candidate's nomination papers (the "Final Decision"). Petitioner's counsel at the conclusion of the hearing. Petitioner seeks judicial review of that decision.

## STANDARD OF REVIEW

15. An electoral board acts as an administrative agency (*Kozel v. State Board of Elections,* 126 Ill.2d 58, 69, 127 Ill.Dec. 714, 533 N.E.2d 796), however, the standards of review for both administrative agencies and circuit courts are essentially identical. *Cullerton v. Du Page County Officers Electoral Board,* No. 2–08–0605, 384 Ill.App.3d 989, 990, 323 Ill.Dec. 748, 894 N.E.2d 774 (2008).

16. In reviewing decisions of an electoral board, questions of law are reviewed *de novo*, while mixed questions of law and fact are reviewed under the clearly erroneous standard. *Cinkus v. Stickney Mun. Officers Electoral Bd.*, 228 Ill. 2d 200, 210 (2008). "[A]n agency's interpretation of the meaning of the language of a statute constitutes a pure question of law … [and] the court's review is independent and not deferential." *Id.*

4

17. This case rests on the interpretation of the Election Code, by the Electoral Board, and thus the review of the Final Decision by this Court is *de novo.*

18. In summary, the Electoral Board rejected the objections of the Objector, Germaine Light, although acknowledging the uncontested fact that the Candidate, Alexander "AJ" Ruggieri, failed to file with the Electoral Board the statutorily required number of valid nominating signatures, the Electoral Board rejected and disregarded the clear authority of the Illinois Supreme Court and, in doing so, suggested that it has independent judicial authority to fashion its own rules of statutory compliance.

## **THE UNCONTESTED FACTS PRESENTED TO THE ELECTORAL BOARD**

19. The candidate is a member of the Republican Party.

20. The Republican Party is an established political party as determined pursuant to 10 ILCS 5/7-2.

21. The General Election is November 3, 2020.

22. For nominations for State Senate in the General Election, candidates of established parties must file with the Board a minimum of 1000 valid signatures.

23. On June 19, 2020, the Board conducted a records examination.

24. The Board reviewed 1,152 signatures filed by the Candidate with the Board.

25. Of those nominating signatures filed with the Board, the Board found that 203 of them were invalid.

26. The Candidate filed 949 valid signatures, which is less than the statutorily mandated minimum valid signatures for the 2020 General Election, 52nd Senate District.

27. On June 24, 2020, the Candidate filed a Motion to Intervene as a Plaintiff in *Libertarian Party of Illinois, et.al. v. J.B. Pritzker, et.al.*, Case No. 20-cv-2112.

5

28. That matter remains pending and U.S. District Court Judge Norgle has not determined whether the Candidate's claim is even properly before it.

29. In that action, the Candidate asserts that he is entitled to relief as provided Independent Candidates and New Parties relating to the collection of nominating petitions signatures and asserted purely constitutional grounds for relief.

30. In that motion, the Candidate admits that the statutorily required number of signatures is 1,000, that he collected and submitted 1,152 signatures, and that he otherwise complied with Section 8-8 of the Illinois Election Code.

31. On June 26, 2020, the Hearing Officer, James Tenudo, issued a recommendation and report to the Electoral Board finding that the Candidate was not in compliance with the Illinois Election Code for failure to submit sufficient number of nominating signatures.

32. On July 13, 2020, the Hearing Officer, James Tenudo, issued a supplemental recommendation and report to the Electoral Board again finding that the Candidate was not in compliance with the Illinois Election Code for failure to submit sufficient number of nominating signatures and, in addition, striking the Candidate's untimely response to the Petitioner's Motion for Summary Judgement. Exhibit A.

33. On July 20, 2020, the Electoral Board met and, failing to advance the matter to a vote, continued the matter to August 3, 2020.

34. On August 3, 2020, the Electoral Board met and, on a 4-4 vote, rejected the objection of the Petitioner and placed the name of Alexander "AJ" Ruggieri on the ballot for the November 3, 2020 General Election for the 52nd Senate District. Exhibit B.

35. On August 4, 2020, the Electoral Board issued its final decision permitting the Candidate's name to appear on the November 3, 2020 General Election Ballot.

## THE ELECTORAL BOARD'S DECISION TO PERMIT CANDIDATE RUGGIERI ON THE BALLOT IS VOID AND IS WITHOUT STATUTORY BASIS

36. Section 10-8-8 of the Illinois Election Code provides, in pertinent part, as follows:

"All petitions for nomination for the office of State Senator shall be signed by at least 1,000 but not more than 3,000 of the qualified primary electors of the candidate's party in his legislative district." 10 ILCS 5/8-8.

37. Statutory interpretation starts with the language of the statute, as it is the "most reliable indicator of legislative intent …, given its plain and ordinary meaning." *Better Gov't Ass'n v. Ill. High Sch. Ass'n*, 417 Ill. Dec. 728, 735, 89 N.E.3d 376, 383 (2017). "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous." *Id.* (citing *People v. Heather M. (In re M.M.)*, 410 Ill.Dec. 874, 72 N.E.3d 260).

38. The Election Code provides that a candidate's petitions "shall be signed by at least 1,000 but not more than 3,000 of the qualified primary electors of the candidate's party in his legislative district…" 10 ILCS 5/8-8 (emphasis added), see also, **Druck v. Illinois State Bd. of Elections**, 387 Ill. App. 3d 144, 150, 899 N.E.2d 437, 443 (2008).

39. The "preliminary demonstration of a 'significant modicum of support' furthers the state's legitimate interest of 'avoiding confusion, deception, and even frustration of the democratic process at the general election.' " **Libertarian Party of Illinois v. Rednour**, 108 F.3d 768, 774 (7th Cir.1997), quoting **Jenness v. Fortson**, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

40. The State Officer's Electoral Board, in permitting Candidate Ruggieri's name to be placed on the ballot, acted without authority, without jurisdiction, and in specific derogation of the Election Code of the State of Illinois.

7

41. Members of the Electoral Board, specifically members Cadigan, Linnabary, O'Brien and Donahue, acted lawlessly and based their reasoning for permitting Candidate Ruggieri's name to be placed on the November 3, 2020 General Election ballot based on a frivolous and unsubstantiated notion that the Candidate was not required to adhere to Section 5/8-8 of the Election Code and that Candidate Ruggieri's constitutional rights would be infringed if he were not permitted on the ballot.

42. Unfortunately, those members of the Electoral Board disregarded not only the findings of the Hearing Officer, and of Board counsel, but also the Illinois Supreme Court.

43. As a creature of statute, the Election Board possesses only those powers conferred upon it by law. Any power or authority it exercises must find its source within the law pursuant to which it was created. Under section 10–10 of the Election Code (10 ILCS 5/10–10 (West 2004)), an election board's scope of inquiry with respect to objections to nomination papers is limited to ascertaining whether those papers comply with the provisions of the Election Code governing such papers. See ***Nader v. Illinois State Board of Elections***, 354 Ill.App.3d 335, 340, 289 Ill.Dec. 348, 819 N.E.2d 1148 (2004).

44. Although certain members of the Electoral Board recognized the limitations of its jurisdiction and authority, other members of the Electoral Board used a rationale which went beyond the Election Code and, indeed, beyond the pleadings itself, and determined, ipso facto, that the Candidate's constitutional rights were, and would be, infringed by applying the plain meaning of the Election Code to the candidate.

45. Administrative agencies such as the Election Board have no authority to declare a statute unconstitutional or even to question its validity. ***Texaco–Cities Service Pipeline Co. v.***

*McGaw*, 182 Ill.2d 262, 278, 230 Ill.Dec. 991, 695 N.E.2d 481 (1998); see *Wiseman v. Elward,* 5 Ill.App.3d 249, 257, 283 N.E.2d 282 (1972).

46. Any action or decision taken by an administrative agency in excess of or contrary to its authority is void. *Alvarado v. Industrial Commission*, 216 Ill.2d 547, 553–54, 297 Ill.Dec. 458, 837 N.E.2d 909 (2005); see *Citizens to Elect Collins v. Illinois State Board of Elections,* 366 Ill.App.3d 993, 998, 304 Ill.Dec. 521, 853 N.E.2d 53 (2006).

47. In *Delgado v. Bd. of Election Comm'rs of City of Chicago*, 224 Ill. 2d 481, 485, 865 N.E.2d 183, 186 (2007), the Election Board there attempted to do precisely what the Candidate asks of this Board—to consider a constitutionality challenge to pass him through to the ballot. The *Delgado* Court, held that by doing so, the Election Board clearly exceeded its authority—just as this Board would be doing if it considered the Candidate's constitutional claims here. The *Delgado* Court found that the constitutionality of the Election Code was the sole basis for the Election Board's determination and because the Board's ruling on the constitutionality of the law is void and therefore a nullity, the Election Board's rejection of appellants' challenge to the nomination papers has no lawful basis. *Id*.

48. There is simply no dispute that the Electoral Board not only exceeded its authority, but did so with an understanding that it was disregarding long standing precedent of the Illinois Supreme Court. The Electoral Board, in doing so, took action which is void, but also dangerously partisan in the face of the Candidate's admissions of fact that he did not comply with the Election Code, that the constitutional issue was not properly presented to the Electoral Board as a basis for its rationale, and it had passed on exactly the same challenged in substance without finding a constitutional infirmity.

9

49. To be sure, and to expand upon the breadth of the Electoral Board's overreach, the Electoral Board applied Section 8-8 to other candidates from established parties, including those nominees from 67th Representative (Hansen), 112th Representative (Ciampoli), 96th Representative (McGorray), 52nd Representative (Suelzer), 102nd Representative (Esslinger), 100th Representative (Adams), 56th Representative (Kegarise), 55th Senate (Given), 18th Congressional (Petrilli), 50th Representative (Monteleone), 34th Senate (Hofmann), and 4th Congressional (Solorio).

50. It certainly appears to the discerning observer that the Electoral Board disregarded the Election Code only, and strictly, in this application and to the distinct prejudice of the Objector/Petitioner.

51. The Electoral Board, in addition, to its rewrite of the Election Code, disregarded the fact that the Candidate, Alexander Ruggieri, did file 1,152 signatures—in excess of the statutory minimum—and did not seek or request an exception to the requirements of Section 5/8-8.

52. The plain reading of the Section 8-8 provides for no relief from the statutory minimum number of nominating signatures.

53. The Electoral Board, in effect, made its decision on improper and illegal grounds under Delgado, but also made a de facto determination on a constitutional question which was not properly before it and which it did not fully consider. The Electoral Board determined, improperly, that it was the arbiter of the federal constitutional rights of the Candidate, while also infringing on those of the Petitioner/Objector.

## **CONCLUSION**

WHEREFORE, Plaintiff Germaine Light prays for this Court to enter an Order reversing the Electoral Board's Decision overruling Plaintiff's Objection to the Nominating Petitions of

10

Candidate Caroline Patricia Jamieson, sustaining Plaintiff's Objection and ordering that the name of Alexander "AJ" Ruggieri be barred from the November 3, 2020 General Election ballot as a candidate for the Republican Party for the 52nd Senate District.

Date: August 14, 2020

                                                By:*Luke A. Casson*_____
                                                       One of the Attorneys for Petitioner

Luke A. Casson
ANDREOU & CASSON, LTD.
661 West Lake St., Suite 2N
Chicago, Illinois 60661
312.935.2000
lcasson@andreou-casson.com
Firm ID: #39203

11